# NEW YORK *v.* HILL

No. 98–1299.   Argued November 2, 1999—Decided January 11, 2000

SCALIA, J., delivered the opinion for a unanimous Court.

*Robert Mastrocola* argued the cause for petitioner. With him on the briefs was *Howard R. Relin.*

*Lisa Schiavo Blatt* argued the cause for the United States as *amicus curiae* urging reversal. With her on the brief were *Solicitor General Waxman, Assistant Attorney General Robinson,* and *Deputy Solicitor General Dreeben.*

*Brian Shiffrin* argued the cause for respondent. With him on the brief were *Edward John Nowak,* by appointment of the Court, 527 U. S. 1002, and *Stephen J. Bird.*

JUSTICE SCALIA delivered the opinion of the Court.

This case presents the question whether defense counsel's agreement to a trial date outside the time period required by Article III of the Interstate Agreement on Detainers bars the defendant from seeking dismissal because trial did not occur within that period.

I

The Interstate Agreement on Detainers (IAD) is a compact entered into by 48 States, the United States, and the District of Columbia to establish procedures for resolution of one State's outstanding charges against a prisoner of another State. See N. Y. Crim. Proc. Law § 580.20 (McKinney 1995); 18 U. S. C. App. § 2; 11A U. L. A. 48 (1995) (listing jurisdictions). As "a congressionally sanctioned interstate compact" within the Compact Clause of the United States Constitution, Art. I, § 10, cl. 3, the IAD is a federal law subject to federal construction. *Carchman* v. *Nash,* 473 U. S. 716, 719 (1985); *Cuyler* v. *Adams,* 449 U. S. 433, 442 (1981).

A State seeking to bring charges against a prisoner in another State's custody begins the process by filing a detainer, which is a request by the State's criminal justice agency that the institution in which the prisoner is housed hold the prisoner for the agency or notify the agency when release is imminent. *Fex* v. *Michigan,* 507 U. S. 43, 44 (1993). After a detainer has been lodged against him, a prisoner may file a "request for a final disposition to be made of the indictment, information, or complaint." Art. III(a). Upon such a request, the prisoner "shall be brought to trial within one hundred eighty days," "provided that for good cause shown in open court, the prisoner or his counsel being present, the court having jurisdiction of the matter may grant any necessary or reasonable continuance." *Ibid.* Resolution of the charges can also be triggered by the charging jurisdiction, which may request temporary custody of the prisoner for that purpose. Art. IV(a). In such a case, "trial shall be commenced within one hundred twenty days of the arrival of the prisoner in the receiving state," subject again to continuances for good cause shown in open court. Art. IV(c). If a defendant is not brought to trial within the applicable statutory period, the IAD requires that the indictment be dismissed with prejudice. Art. V(c).

In this case, New York lodged a detainer against respondent, who was a prisoner in Ohio. Respondent signed a request for disposition of the detainer pursuant to Article III of the IAD, and was returned to New York to face murder and robbery charges. Defense counsel filed several motions, which, it is uncontested, tolled the time limits during their pendency.

On January 9, 1995, the prosecutor and defense counsel appeared in court to set a trial date. The following colloquy ensued:

> "[Prosecutor]: Your Honor, [the regular attorney] from our office is engaged in a trial today. He told me that

the Court was to set a trial date today. I believe the Court may have preliminarily discussed a May 1st date, and [the regular attorney] says that would fit in his calendar.

"The Court: How is that with the defense counsel?

"[Defense Counsel]: That will be fine, Your Honor." 164 Misc. 2d 1032, 1035, 627 N. Y. S. 2d 234, 236 (Cty. Ct., Monroe County 1995).

The court scheduled trial to begin on May 1.

On April 17, 1995, respondent moved to dismiss the indictment, arguing that the IAD's time limit had expired. The trial court found that as of January 9, 1995, when the trial date was set, 167 nonexcludable days had elapsed, so that if the subsequent time period was chargeable to the State, the 180-day time period had indeed expired. However, the trial court concluded that "[d]efense counsel's explicit agreement to the trial date set beyond the 180 day statutory period constituted a waiver or abandonment of defendant's rights under the IAD." *Id.*, at 1036, 627 N. Y. S. 2d, at 237. Accordingly, the court denied respondent's motion to dismiss.

Respondent was subsequently convicted, following a jury trial, of murder in the second degree and robbery in the first degree. On appeal, respondent argued that the trial court erred in declining to dismiss the indictment for lack of a timely trial under the IAD. The New York Supreme Court, Appellate Division, affirmed the decision of the trial court. 244 App. Div. 2d 927, 668 N. Y. S. 2d 126 (1997). The New York Court of Appeals, however, reversed and ordered that the indictment against respondent be dismissed; defense counsel's agreement to a later trial date, it held, did not waive respondent's speedy trial rights under the IAD. 92 N. Y. 2d 406, 704 N. E. 2d 542 (1998). We granted certiorari. 526 U. S. 1111 (1999).

## II

No provision of the IAD prescribes the effect of a defendant's assent to delay on the applicable time limits. We have, however, "in the context of a broad array of constitutional and statutory provisions," articulated a general rule that presumes the availability of waiver, *United States* v. *Mezzanatto*, 513 U. S. 196, 200–201 (1995), and we have recognized that "[t]he most basic rights of criminal defendants are . . . subject to waiver," *Peretz* v. *United States*, 501 U. S. 923, 936 (1991). In accordance with these principles, courts have agreed that a defendant may, at least under some circumstances, waive his right to object to a given delay under the IAD, although they have disagreed on what is necessary to effect a waiver. See, *e. g., People* v. *Jones*, 197 Mich. App. 76, 80, 495 N. W. 2d 159, 160 (1992) (waiver if prisoner "either expressly or impliedly, agrees or requests to be treated in a manner contrary to the terms of the IAD"); *Brown* v. *Wolff*, 706 F. 2d 902, 907 (CA9 1983) (waiver if prisoner "affirmatively requests to be treated in a manner contrary to the procedures prescribed by the IAD"); *Drescher* v. *Superior Ct.*, 218 Cal. App. 3d 1140, 1148, 267 Cal. Rptr. 661, 666 (1990) (waiver if there is a "showing of record that the defendant or his attorney freely acquiesced in a trial date beyond the speedy trial period" (internal quotation marks omitted)).

What suffices for waiver depends on the nature of the right at issue. "[W]hether the defendant must participate personally in the waiver; whether certain procedures are required for waiver; and whether the defendant's choice must be particularly informed or voluntary, all depend on the right at stake." *United States* v. *Olano*, 507 U. S. 725, 733 (1993). For certain fundamental rights, the defendant must personally make an informed waiver. See, *e. g., Johnson* v. *Zerbst*, 304 U. S. 458, 464–465 (1938) (right to counsel); *Brookhart* v. *Janis*, 384 U. S. 1, 7–8 (1966) (right to plead not guilty). For other rights, however, waiver may be effected by action of counsel. "Although there are basic rights that the attorney

cannot waive without the fully informed and publicly acknowledged consent of the client, the lawyer has—and must have—full authority to manage the conduct of the trial." *Taylor* v. *Illinois,* 484 U. S. 400, 417–418 (1988). As to many decisions pertaining to the conduct of the trial, the defendant is "deemed bound by the acts of his lawyer-agent and is considered to have 'notice of all facts, notice of which can be charged upon the attorney.'" *Link* v. *Wabash R. Co.,* 370 U. S. 626, 634 (1962) (quoting *Smith* v. *Ayer,* 101 U. S. 320, 326 (1880)). Thus, decisions by counsel are generally given effect as to what arguments to pursue, see *Jones* v. *Barnes,* 463 U. S. 745, 751 (1983), what evidentiary objections to raise, see *Henry* v. *Mississippi,* 379 U. S. 443, 451 (1965), and what agreements to conclude regarding the admission of evidence, see *United States* v. *McGill,* 11 F. 3d 223, 226–227 (CA1 1993). Absent a demonstration of ineffectiveness, counsel's word on such matters is the last.

Scheduling matters are plainly among those for which agreement by counsel generally controls. This case does not involve a purported prospective waiver of all protection of the IAD's time limits or of the IAD generally, but merely agreement to a specified delay in trial. When that subject is under consideration, only counsel is in a position to assess the benefit or detriment of the delay to the defendant's case. Likewise, only counsel is in a position to assess whether the defense would even be prepared to proceed any earlier. Requiring express assent from the defendant himself for such routine and often repetitive scheduling determinations would consume time to no apparent purpose. The text of the IAD, moreover, confirms what the reason of the matter suggests: In allowing the court to grant "good-cause continuances" when either "prisoner *or his counsel*" is present, it contemplates that scheduling questions may be left to counsel. Art. III(a) (emphasis added).

Respondent offers two arguments for affirmance, both of which go primarily to the propriety of allowing waiver of

any sort, not to the specifics of the waiver here. First, he argues that by explicitly providing for the grant of "good-cause continuances," the IAD seeks to limit the situations in which delay is permitted, and that permitting other extensions of the time period would override those limitations. It is of course true that waiver is not appropriate when it is inconsistent with the provision creating the right sought to be secured. *E. g., Crosby* v. *United States,* 506 U. S. 255, 258–259 (1993); *Smith* v. *United States,* 360 U. S. 1, 9 (1959). That is not, however, the situation here. To be sure, the "necessary or reasonable continuance" provision is, by clear implication, the sole means by which the prosecution can obtain an extension of the time limits over the defendant's objection. But the specification in that provision that the "prisoner or his counsel" must be present suggests that it is directed primarily, if not indeed exclusively, to prosecution requests that have not explicitly been agreed to by the defense. As applied to agreed-upon extensions, we think its negative implication is dubious—and certainly not clear enough to constitute the "affirmative indication" required to overcome the ordinary presumption that waiver is available. *Mezzanatto, supra,* at 201.[1]

Second, respondent argues that the IAD benefits not only the defendant but society generally, and that the defendant may not waive society's rights. It is true that a "right conferred on a private party, but affecting the public interest, may not be waived or released *if such waiver or release contravenes the statutory policy." Brooklyn Savings Bank* v. *O'Neil,* 324 U. S. 697, 704 (1945) (emphasis added). The

---

[1] It was suggested at oral argument that agreement in open court to a trial date outside the allowable time period can itself be viewed as a "necessary or reasonable continuance" for "good cause shown in open court." Although an agreed-upon trial date might sometimes merit this description, it is far from clear that it always does so, or that it does so here. Because we find waiver, we do not consider under what circumstances an agreed-upon delay could fit within the good-cause provision.

conditional clause is essential, however: It is *not* true that any private right that also benefits society cannot be waived. In general, "[i]n an adversary system of criminal justice, the public interest in the administration of justice is protected by the participants in the litigation." *Gannett Co.* v. *DePasquale*, 443 U. S. 368, 383 (1979). We allow waiver of numerous constitutional protections for criminal defendants that also serve broader social interests. See, *e. g., Adams* v. *United States ex rel. McCann*, 317 U. S. 269, 275 (1942) (waiver of right to jury trial); *Johnson*, 304 U. S., at 464 (waiver of right to counsel).

Society may well enjoy some benefit from the IAD's time limits: Delay can lead to a less accurate outcome as witnesses become unavailable and memories fade. See, *e. g., Sibron* v. *New York*, 392 U. S. 40, 56–57 (1968). On the other hand, some social interests served by prompt trial are less relevant here than elsewhere. For example, because the would-be defendant is already incarcerated in another jurisdiction, society's interests in assuring the defendant's presence at trial and in preventing further criminal activity (or avoiding the costs of pretrial detention) are simply not at issue. Cf. *Barker* v. *Wingo*, 407 U. S. 514, 519 (1972). In any case, it cannot be argued that society's interest in the prompt resolution of outstanding charges is so central to the IAD that it is part of the unalterable "statutory policy," *Brooklyn Savings Bank, supra*, at 704. In fact, the time limits do not apply at all unless either the prisoner or the receiving State files a request.[2] Thus, the IAD "contemplate[s] a de-

---

[2] This feature, among others, makes respondent's analogy to the federal Speedy Trial Act of 1974, 18 U. S. C. § 3161 *et seq.*, inapt. The time limits of the Speedy Trial Act begin to run automatically rather than upon request, §§ 3161(a), (b); dismissal may sometimes be without prejudice, §§ 3162(a)(1), (2), *United States* v. *Taylor*, 487 U. S. 326, 332–333 (1988); and waiver is expressly allowed in certain limited circumstances, 18 U. S. C. § 3162(a)(2). In any event, the question of waiver under the Speedy Trial Act is not before us today, and we express no view on the subject.

gree of party control that is consonant with the background presumption of waivability." *Mezzanatto*, 513 U. S., at 206.[3]

Finally, respondent argues that even if waiver of the IAD's time limits is possible, it can be effected only by affirmative conduct not present here. The New York Court of Appeals adopted a similar view, stating that the speedy trial rights guaranteed by the IAD may be waived either "explicitly or by an affirmative request for treatment that is contrary to or inconsistent with those speedy trial rights." 92 N. Y. 2d, at 411, 704 N. E. 2d, at 545. The court concluded that defense counsel's agreement to the trial date here was not an "affirmative request" and therefore did not constitute a waiver. *Id.*, at 412, 704 N. E. 2d, at 546. We agree with the State that this makes dismissal of the indictment turn on a hypertechnical distinction that should play no part. As illustrated by this case, such an approach would enable defendants to escape justice by willingly accepting treatment inconsistent with the IAD's time limits, and then recanting later on. Nothing in the IAD requires or even suggests a distinction between waiver proposed and waiver agreed to. In light of its potential for abuse—and given the harsh remedy of dismissal with prejudice—we decline to adopt it.

\* \* \*

The judgment of the New York Court of Appeals is reversed.

*It is so ordered.*

---

[3] In concluding that objection to a specified delay may be waived, we are mindful that the sending State may have interests distinct from those of the prisoner and the receiving State. This case does not involve any objection from the sending State, and we do not address what recourse the sending State might have under the IAD when the receiving State and prisoner agree to, and the court allows, an inordinate delay. Cf. Article V(e) ("At the earliest practicable time consonant with the purposes of this agreement, the prisoner shall be returned to the sending State").