CRAWFORD, Chief Judge
(concurring in part and dissenting in part):
I am concerned with cruel and unusual punishment and the failure to prevent it. Like the majority, I agree that this Court has jurisdiction to examine allegations of cruel and unusual punishment in violation of Article 55 when a case is on direct appeal as to the adjudged and approved sentence. However, I cannot concur with the majority insofar as they shift the burden of proof to the Government to disprove an alleged Article 55 violation, instead of placing the burden where it should be, on the party who has allegedly been wronged.
As the majority notes, appellant was no stranger to the military justice system or incarceration.* On November 2, 1997, 5 months prior to appellant’s second general court-martial on April 7, 1998, he was moved from confinement in San Diego and entered confinement at Dyess Air Force Base, Texas. Although appellant’s affidavit is unclear, a fair reading of that document, in conjunction with appellate defense counsel’s pleadings and oral argument, indicates that the majority, if not all, of the alleged aberrant behavior on the part of Dyess prison guards ensued immediately following appellant’s arrival at Dyess Air Force Base.
During extenuation and mitigation at his April 7, 1998, court-martial, appellant made no mention of the treatment which he had received at the hands of the Dyess Air Force Base guards for 5 months. After the introduction of 35 different exhibits, appellant’s mother testified on his behalf. Appellant followed this with an unsworn statement that he read to the Court. In particular, appellant informed the military judge of his past court-martial and its associated sentence. Notably, he said that regarding the Joint Forces Brig, Camp Hanson, Okinawa, Japan, where he was confined after his first court-martial, “The Marines are in charge of this brig, and the time I spent there was very hard.”
After 5 months in the brig at Okinawa, he was transferred to the Naval Consolidated Brig at Miramar. Appellant related how he had rehabilitated himself while serving confinement at Miramar, and that he had been granted parole and was due to be released on January 6, 1998. However, before that happened, he was transferred back to Dyess and had his parole revoked. With some bitterness, he informed the judge that “[ajfter all the hard work and dedication to rehabilitate myself and get ... parole, I lost it,” just to be court-martialed once again for charges that were known of and “could have been taken care of way back when I was originally charged and sentenced.”
*480 Although, as the majority notes, the record is unclear as to when the alleged degrading conduct occurred, I am convinced that any such maltreatment occurred prior to appellant’s April 7, 1998, court-martial. By failing to raise this issue of constitutional proportion at trial, or even in his submission under RCM 1105, Manual for Courts-Martial, United States (2000 ed.), prior to the convening authority’s action on June 22, 1998, appellant has forfeited his right to complain in this Court. See generally, New York v. Hill, 528 U.S. 110, 120 S.Ct. 659, 145 L.Ed.2d 560 (2000); Stewart v. LaGrand, 526 U.S. 115, 119 S.Ct. 1018, 143 L.Ed.2d 196 (1999); cf. United States v. Scalarone, 54 MJ 114, 119 (2000)(Crawford, C.J., dissenting).
Remanding this case for a factfinding hearing under United States v. DuBay, 17 USCMA 147, 37 CMR 411 (1967), perpetuates the ad hoc remedy approach to these type of issues instead of requiring an institutional or systemic remedy. Although he introduced 35 exhibits at his court-martial, appellant did not introduce one shred of documentary evidence that he had complained to any of the parties he said he did and it was these parties who could have rectified mistreatment by the guards. Furthermore, appellant’s affidavit does not name any of the individuals to whom he allegedly complained. As we have said on a number of occasions, a person who requests relief from this Court as a result of having suffered cruel and unusual punishment must demonstrate an exhaustion of administrative remedies before seeking judicial intervention. United States v. Avila, 53 MJ 99, 101 n. 1 (2000); United States v. Miller, 46 MJ 248, 250 (1997).
Certainly, appellant was aware of his ability to complain to the Inspector General, since he referenced an Inspector General report in his request for clemency after his first general court-martial. An examination of the exhibits appellant submitted at his April 7, 1998, court-martial reinforces my belief that he was well familiar with the prisoner-grievance system and how to properly report and abate the misconduct of which he complains.
The burden of persuasion should be on the party with knowledge of the abuse and the ability to show the administrative actions taken to counter that abuse. That burden could have been met in this case by presenting appellant’s letter to his Congressman and the reply thereto; the name of the chaplain to whom he complained; the names of those guards who cursed at and taunted him; the name of the guard who referred to him as a “little bitch”; a written synopsis of appellant’s conversation with the superintendent, Master Sergeant Callahan; documentary evidence of his attempts to speak to his first sergeant and commander; and interlocking affidavits from other prisoners attesting to the conditions at Dyess Air Force Base. Until such evidence is presented, appellant has neither stated a colorable claim warranting a DuBay hearing nor demonstrated an attempt to exhaust his administrative remedies. Accordingly, I would affirm the findings of guilt and sentence in this case.

 On June 25, 1996, appellant was convicted of 5 specifications of larceny and 10 specifications of falsely altering official documents to divert government funds into his personal bank account.