*682 OPINION OF THE COURT
Ralph T. Gazzillo, J.
By pro se notice of motion, the defendant has made an application for an order which would (1) permit him to withdraw his plea of guilty “due to ineffective assistance of counsel,” and (2) dismiss the indictment pursuant to the Interstate Agreement on Detainers Act (18 USC Appendix 2, § 2, arts I-IX). By subsequent notice of motion, defendant’s current attorney of record has made an application for the latter relief. The prosecution has opposed both motions in their entirety. The applications are decided as follows:
Facts
Based upon the papers submitted, the court’s file, as well as the record of the relevant proceedings, this matter’s facts may be briefly summarized. Indeed, it is fair to view the dispute between the parties not as a disagreement as to the facts, but rather the law.
This matter begins with the indictment which charges the defendant with two class B felonies, specifically criminal sale as well as criminal possession of a controlled substance, both in the third degree. On or about March 21, 2003, while being held — presentence—on federal charges, the defendant was produced before this court, arraigned on the instant matter, and a “not guilty” plea entered by counsel. Thereafter, he was released on bail.
On June 19, 2003, however, the defendant was sentenced to one year in federal prison for the prior, federal matter. On August 27, 2003, the defendant was again produced before this court by way of a writ of habeas corpus ad prosequendum. As a result of plea negotiations, the defendant was offered a dismissal of the one charge, as well as a reduction of the other from a B felony to one D felony (specifically, criminal possession of a controlled substance in the fifth degree). In exchange, the bargained-for sentence was set at an indeterminate period of incarceration, the minimum of which would be two years, the maximum of which would be four.[1] The prosecution’s offer also included two other caveats, both of which were to the defen *683 dant’s benefit: (a) the proposed sentence was to run concurrently with his federal sentence, and (2) it was to be nunc pro tunc to December 30, 2002.
The defendant, however, declined to accept the offer, claiming he “needed more time.” At his request, the matter was adjourned and he was returned to federal custody.
On October 20, 2003, the defendant was again produced from federal authorities. He accepted the previously offered plea, pleaded guilty, and the matter was adjourned for a presentence investigation as statutorily required. (CPL 390.20 [2], [4].) It is notable, and as referred to in the plea minutes (at 14-15), that the sentencing date was selected so as to present him the opportunity to first resolve his federal matter; in that manner, there would be the opportunity for him to maximize any benefit from his proposed concurrent state sentence.[2]
With respect to the colloquy of his state plea of October 20, 2003, it merits adding that the proceeding was an exhaustive inquiry, the transcript of which spans 15 pages. Before any questioning of the defendant, the entire plea offer was spread upon the record. (Plea minutes at 2-3.) After being placed under oath, he acknowledged that he would be given the opportunity at anytime during the proceeding to speak with the court or his attorney, and that he would accept the plea (at 4-5). Prior to his allocution to the crime, the undersigned asked him no less than 21 questions (at 4-12). As reflected within the minutes, the defendant, while under oath, at that time approaching his 30th birthday, in the presence of counsel as well as his family, swore to the truth of his answers, and, subsequently, to his guilt. Additionally, he admitted that he had previously discussed the matter with his attorney, “as well as any one else [he cared] to speak with” (at 5). He also acknowledged that, prior to his plea, he had been given the “opportunity to speak to [his] family” (once again, who were present prior to and during the plea), as well as his satisfaction with his attorney (at 5-6).
Particularly germane to the instant application are the following exchanges:
*684 “the court: First of all, is this [the proposed plea and sentence] what you want to do?
“the defendant: Yes, Your Honor” (at 5).
“the court: Do you understand by pleading guilty this afternoon you’re giving up or waiving each and every one of these rights [right to trial, prosecution’s burden of production, proof beyond a reasonable doubt, cross-examination, right to testify, stand silent, submit evidence/witnesses] as well as any other rights?
“the defendant: Yes, Your Honor” (at 6-7 [emphasis added]).
“the court: By pleading guilty, sir, you’re giving up or waiving any defense you might have to this case. Has your attorney explained this to you, as well as any defenses you might have to this case . . .
“the defendant: Yes” (at 8 [emphasis added]).
“the court: Sir, is there any reason why I should not accept this plea from you this afternoon ?
“the defendant: No” (at 12 [emphasis added]).
Law
The legal analysis begins, of course, with the statutory law, USC title 18, Appendix 2, § 2, the so-called “Interstate Agreement on Detainers” more informally referred to as the “anti-shuffling” law. The federal statute is mirrored by its New York cousin, found within CPL article 580, in a joint compact with the United States, the District of Columbia, and almost all of the other individual states. And, of course, for those questions unanswered by a reading of the black-letter law, there is an abundance of case law. Since the federal and state statutes essentially share the same language, concepts and goals, decisions under each, even if not controlling, often provide an instructive logic.
To begin with, the somewhat general rule vis-á-vis withdrawal of a plea is that one who enters a plea does not automatically have the right to withdraw it; the circumstances — if any — which justify permitting any withdrawal are left to the sound discretion of the trial court to determine. (See, e.g., Barker v United States, 579 F2d 1219 [10th Cir 1978].) Presentence, the basic focus of a withdrawal of a plea is fairness and justice, versus the postsentence, higher standard of manifest injustice. (Id.) Moreover, a guilty plea waives all nonjurisdictional defects and defenses. (Id.; see also, Camp v United States, 587 F2d 397 [8th Cir 1978]; People v Cusick, 111 AD2d 251 [2d Dept 1985].)
*685 The operative portions of the “anti-shuffling” law relative to the matter at bar are clearly not “jurisdictional”; a contrary determination misconstrues the nature of that term as well as the statute. (Camp v United States, supra; see, also People v Vidal, 85 AD2d 701 [2d Dept 1981].) Indeed, our Court of Appeals has recently reaffirmed the general rule that “statutory violations [which have not been deemed] constitutional [in nature] have not been deemed jurisdictional in nature.” (People v Konieczny, 2 NY3d 569, 574 [2004] [citations omitted].) Furthermore, any defects in the administration of the “anti-shuffling” law may be waived. (Camp v United States, supra.) Additionally, since the rights derived from the statute are not constitutionally guaranteed, their waiver is not conditioned upon the “knowing and intelligent” constraints otherwise required. (Id.; People v Cusick, supra at 251-252.)
The nonjurisdictional nature of the statute being settled, the next issue is the impact of a plea of guilty on any claimed violations of the statute. As noted in a number of cases, allegations of defects as claimed have been held as not surviving a guilty plea. (Baxter v United States, 966 F2d 387 [8th Cir 1992]; Beachem v Attorney Gen. of Mo., 808 F2d 1303 [8th Cir 1987]; United States v Hobson, 686 F2d 628 [1982]; see also, People v Zak, 242 AD2d 895 [4th Dept 1997]; People v Cusick, supra; People v Vidal, supra.)
Turning the focus to the result of the defendant’s allegations of incompetency of his counsel upon the analysis, case law again provides a template. Clearly, merely bootstrapping a claim of “ineffective counsel” to an alleged violation of an “anti-shuffling” statute is not enough. Among other factors, there must be a showing which overcomes the presumption of effective representation, and the merits of that showing are determined after a review of the specifics of the individual case. Included among the ingredients are the benefits the defendant derived from the bargain; where the latter sufficiently tips toward the defendant’s favor, an otherwise naked claim of attorney ineffectiveness will not undermine the plea’s viability. (United States v Hach, 615 F2d 1203 [8th Cir 1980]; People v Woodson, 176 AD2d 186 [1st Dept 1991].)
Lastly, there is another aspect of the legal analysis of this matter which merits mention. “The purpose of the detainer agreement in requiring a prompt trial on outstanding indictments is not to be thwarted by a defendant who might occasion delay and then attempt to obtain dismissal of the indictment on *686 the basis of that delay.” (People v Chiofalo, 73 AD2d 673, 673 [2d Dept 1979] [citations omitted].) Indeed, the High Court has expressed its dismay with any view of the statute which would enable a criminal defendant to evade justice by first accepting treatment contrary to the statute’s time constraints, then recanting his acceptance. (New York v Hill, 528 US 110 [2000].)
Conclusions
Juxtaposing these principles of law to the relevant facts, the undersigned finds the defendant’s applications as an insufficient predicate to the relief requested.
To begin with, it is beyond peradventure that the alleged violation is not jurisdictional. Additionally, and as demonstrated above, even if, arguendo, his rights were violated, he waived any such violation by his plea of guilty. Further support for that result is found in his responses to questions, through which he waived a number of delineated rights “as well as any other rights” and, subsequently, “any defenses [he] might have.”
Moreover, his plea, his sworn statements, as well as his acts are all consistent with a finding of a waiver. It was he who required an adjournment of the proceedings since he “needed more time.”[3] Thereafter, he accepted the plea without further comment. All of this, his plea, his sworn statements during the plea, were all after more than ample time and multiple opportunities to speak with his attorney, family members, and anyone else he deemed necessary. With no more apparent motivation than the benefit of hindsight (or a calculated recant *687 ing to evade justice), he cannot now revoke his waiver nor deny his actions.
Lastly, the undersigned also finds the claim of ineffective counsel less satisfactory. In this regard, the string-cited cases contained in his papers are — in law and in fact — readily distinguishable from this matter; as such, they are less than persuasive and of purely speculative value. Similarly, and again other than founded on hindsight or contrived mischief and calculation, his tardiness and the basis for raising the issue have not been sufficiently explained. Clearly, the generous plea does not support such a finding. As noted, most of his promised sentence would have been served concurrently with his federal sentence. Secondarily, should he have gone to trial and not prevailed, the minimum sentence available would be more than twice that offered, the maximum more than six times as much. Obviously, anyone familiar with the arena of plea bargains would deem the results obtained by his defense counsel’s performance more than merely adequate.[4]
It is, therefore, the determination of the court that the application is without merit and it is denied in all respects.

. This was a substantial reduction. As charged in the indictment, his incarceration exposure as a potential prior felony offender had been a minimum, of 4x/2 to 9 years, and a maximum of 12V2 to 25 years. (Penal Law § 70.06 [4], [2].) Moreover, and while dehors the record, if there is a plea offer by the prosecution to another, similarly charged, similarly potentially prior *683 felony offender, the typical offer is most often to a C felony, with a recommendation of somewhere between a low of 3 to 6 years, and a high of 4 to 8 years.

. For this court to order a sentence to be served concurrently with another, obviously the other sentence must be in place. Until that other sentence is imposed, the other court is free, of course, to elect that its sentence be consecutively served, and not concurrently. In the matter at bar, the “other court” is, of course, a federal court.

. Even the subsequent, postplea adjournment for his sentencing was at his request and is manifestly consistent with his continued waiver. Indeed, that adjournment was fashioned for his benefit — so as to put in place an opportunity for him to resolve his federal matter and to thereafter serve, concurrently, as much of his two sentences as practicable. (Simultaneously, that would also satisfy one of the “anti-shuffling” law’s goals.) Where practicable, the statute seeks to provide a mechanism which does not deprive a criminal defendant from the possibility of receiving one sentence which is at least partially concurrent with that imposed by another jurisdiction, i.e., a state sentence which might be served all or in part with a federal sentence. The year before passage of the federal “anti-shuffling” law, in addressing problems accompanying pretrial delays, the majority of the High Court listed the potential for loss of the opportunity for concurrent sentences first among its concerns. (Smith v Hooey, 393 US 374, 378 [1969].) That case is one of the two cited in the Senate report on the then-proposed bill. (Senate Rep No. 91-1356, 91st Cong, 2d Sess, reprinted in 1970 US Code Cong & Admin News, at 4864-4870.)

. Similarly rejected are his allegations that the prosecution intentionally violated his rights. The atypical generous plea bargain alone undercuts any such contention. Moreover, the undersigned, having been privy to portions of the negotiations, did not hear, see, or sense even a scintilla of evidence of any such motivation. Indeed, years of experience with the prosecution support a contrary finding. Parenthetically, however, the court is constrained to note that those years of experience as well as case law by other courts (see, e.g., People v Hicks, 98 NY2d 185 [2002]) indicate that the first positive step toward rehabilitation is a defendant’s sincere admission of wrongdoing. Sadly, those who do not, and instead blame others, tend toward recidivism.