*130 CRAWFORD, Judge
(dissenting in part and concurring in the result):
While the majority notes that Article 10, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 810 (2000), is a “more exacting” right, it overlooks the history behind the UCMJ provisions of the Manual for Courts-Martial, United States (2002 ed.)(MCM), and mainstream jurisprudence in this area. Thus, I respectfully dissent from the majority opinion that an unconditional plea of guilty does not waive Appellant’s rights to a speedy trial whether asserted under the Sixth Amendment, the UCMJ, or the MCM. The congressional history underlying Article 10 has not altered what a majority of the courts have held concerning unconditional guilty pleas.
History Behind the UCMJ. When Congress passed the UCMJ in 1950, there was some question as to the applicability of the Bill of Rights to members of the Armed Forces. Fifty-five years later, the Supreme Court still has never expressly held that the Bill of Rights applies to servicemembers. In United States ex rel. Innes v. Crystal, 131 F.2d 576, 577 n. 2 (2d Cir.1943) (citing Ex parte Quirin, 317 U.S. 1, 63 S.Ct. 1, 2, 87 L.Ed. 3 (1942)), the court stated, “The Fifth and Sixth Amendments are, of course, inapplicable to courts-martial.” This question about the application of the Bill of Rights to the military resulted in Congress passing Articles 10, 27,[1] 31,[2] 44,[3] 46,[4] and 63,[5] UCMJ.
Early in the Court’s history, when examining the question of speedy trial, it “bottom[ed] those [constitutional] rights and privileges” on the Due Process Clause of the Fourteenth Amendment rather than on the specific provisions in the Bill of Rights. United States v. Clay, 1 C.M.A. 74, 77, 1 C.M.R. 74, 77 (1951). In one of our earlier eases, United States v. Hounshell, this Court stated, “[t]he United States Constitution guarantees to a person protected under federal law ‘the right to speedy and public trial.’ Article 10 of the Uniform Code ... reiterates that guarantee----” 7 C.M.A. 3, 6, 21 C.M.R. 129, 132 (1956)(quoting U.S. Const. amend. VI). Indeed, the legislative history behind Article 10 strongly suggests it was intended only to remedy delays concerning pretrial restraint. See Uniform Code of Military Justice: Hearings on H.R. 2498 Before a Subcomm. of the House Comm. on Armed Services, 81st Cong. 905-12 (1949)[hereinaf-ter UCMJ Hearings ]. That subcommittee viewed Article 10 solely as a tool to terminate lengthy pretrial confinement. Id.
The right to counsel guaranteed under Article 27 was not applicable through the Bill of Rights to state proceedings until 1963. It was not until that year, in Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963), that the Supreme Court extended the right to appointment of counsel in state cases to all indigent felony defendants. Pri- or to that, Congress had ensured some right to counsel for military members by passing Article 27, but that right was limited to general courts-martial. Congress extended this right to special courts-martial in 1968. Of course, it is not enough to have counsel; counsel must zealously represent the accused, starting with a full investigation of the case. See, e.g., House v. Balkcom, 725 F.2d 608 (11th Cir.1984). The right to counsel is one of the most valuable rights that a defendant possesses, but certain decisions are for the defendant to control while the remainder are left with counsel. The Supreme Court has recognized that counsel has the authority to manage most aspects of the defense without obtaining the defendant’s approval. See, e.g., Florida v. Nixon, 543 U.S. 175, 125 S.Ct. 551, 160 L.Ed.2d 565 (2004). In New York v. Hill, the Supreme Court stated: “[D]efense counsel’s agreement to a trial date outside the time period required by [the Interstate Agreement on Detainers] bars the defendant from seeking dismissal because trial did not occur within that period.” 528 U.S. 110, 111, 120 S.Ct. 659, 145 L.Ed.2d 560 (2000). Moreover, the Hill Court said, “only counsel *131 is in a position to assess the benefit or detriment of the delay to the defendant’s case,” Id. at 115, 120 S.Ct. 659, and “only counsel is in a position to assess whether the defense would even be prepared to proceed any earlier.” Id.
Feeling that the self-incrimination clause did not apply to military members, Congress enacted Article 31 to protect the right against self-incrimination in the military setting. Additionally, in enacting Article 31(b), Congress was concerned that the interrogation environment in the military and the interplay between military relationships and following orders deserved protection. See UCMJ Hearings at 984-85. As this Court stated, “[ujndoubtedly it was the intent of Congress in this division of the Article to secure to persons subject to the Code the same rights secured to those of the civilian community under the Fifth Amendment to the Constitution of the United States — no more and no less.” United States v. Eggers, 3 C.M.A. 191, 195, 11 C.M.R. 191, 195 (1953). In his testimony on the UCMJ, Mr. Felix Larkin, Assistant General Counsel in the Office of the Secretary of Defense, expressed the desire to “retain the constitutional protections against self-incrimination.” UCMJ Hearings at 988. The UCMJ was enacted to ensure those constitutional rights because of the deep division as to the applicability of those rights in different factual scenarios. The commentary to Article 31(a) also underscores the intent to “extend [the] privilege against self-incrimination to all persons under all circumstances.” H.R. Rep. 8H91 at 19 (1949).
Likewise, Congress enacted Article 44 because “the application of [the Fifth Amendment] is in doubt____ The matter could be clarified by extending the protection of the fifth amendment rather than granting protection by means of different or new statutory enactment.” Uniform Code of Military Justice: Hearings on § 857 and H.R. 4-080 Before a Subcomm. of the Senate Comm, on Armed Services, 81st Cong. 111 (1949) (statement of Sen. Pat McCarran, Chairman, Senate Judiciary Comm.). House commentary on the UCMJ observed: “The question is whether the constitutional provision of jeopardy follows a person who enters military service.” H.R. Rep. 81-491 at 23.
As to the double jeopardy provision, this Court reiterated the theme that the Constitution did not apply, stating, “The constitutional privilege against former jeopardy, applicable to the civilian community, is granted to offenders against military law by Article 44____” United States v. Ivory, 9 C.M.A. 516, 519-20, 26 C.M.R. 296, 299-300 (1958).
In the past, this Court applied a due process examination before it had announced that the Bill of Rights applies “except those [rights] which are expressly or by necessary implication inapplicable.” United States v. Jacoby, 11 C.M.A. 428, 430-31, 29 C.M.R. 244, 246-47 (1960). Because the Supreme Court has not held that the Bill of Rights applies to servicemembers, our Court, in its early years, did not rely upon speedy trial rights.
The question of the application of the Fourth Amendment as to the right to privacy,[6] the self-incrimination clause of the Fifth Amendment,[7] speedy trial,[8] or the right of confrontation cross-examination under the Sixth Amendment[9] is moot based on congressional and presidential actions.
MCM Provision. The majority also overlooks R.C.M. 707(e), which states that: “Except as provided in R.C.M. 910(a)(2) [conditional pleas], a plea of guilty which results in a finding of guilty waives any speedy trial issue as to that offense.” (Emphasis added.) This provision by the President does not violate any constitutional provision — there is certainly none prohibiting this waiver, and many federal courts provide for such a waiver.
Because the majority overlooks mainstream jurisprudence and the MCM provisions, I respectfully dissent.

. 10 U.S.C. § 827 (2000).

. 10 U.S.C. § 831 (2000).

. 10 U.S.C. § 844 (2000).

. 10 U.S.C. § 846 (2000).

. 10 U.S.C. § 863 (2000).

. Military Rule of Evidence (M.R.E.) 311-317.

. Article 31, UCMJ; M.R.E. 301-306.

. Article 10, 33; R.C.M. 707.

. Article 46, UCMJ; R.C.M. 702, 703; M.R.E. 611‘