## In the Matter of the PETITION OF the STATE of Delaware FOR a WRIT OF MANDAMUS.

### No. 54, 2007.

Supreme Court of Delaware.

Submitted: Feb. 15, 2007.
Decided: Feb. 16, 2007.

Loren C. Meyers, and Paul R. Wallace, Department of Justice, Wilmington, DE, for the State of Delaware.

J. Brendan O'Neill, Kevin J. O'Connell, Bernard J. O'Donnell, and Nicole M. Walker, Assistant Public Defenders, Wilmington, DE, for Defendant James E. Cooke.

Charles M. Oberly, III, and Karen V. Sullivan, Oberly, Jennings & Rhodunda, P.A., Wilmington, DE, for Judge Jerome O. Herlihy.

Before STEELE, Chief Justice, HOLLAND and BERGER, Justices.

HOLLAND, Justice:

This Court has before it a petition that seeks to invoke its original jurisdiction for the purpose of issuing an extraordinary writ. The petition was filed by the State of Delaware and requests that this Court issue a writ of mandamus to Superior Court Judge Jerome O. Herlihy. The underlying matter that gave rise to the present proceeding is an evidentiary ruling during an ongoing capital murder trial.

James E. Cooke ("Cooke"), who is represented by two attorneys, is charged with First Degree Capital Murder and other serious offenses, and has pleaded not guilty. On the basis of psychiatric examinations and other evidence, Cooke's counsel intend to contest the State's proof of guilt, but also plan, concurrently, to present mitigation evidence of Cooke's mental illness. Several days prior to the beginning of trial, Cooke's defense counsel advised the trial judge that, based on their conversations with Cooke, he was not in agreement with presenting evidence of mental illness that would support a verdict of guilty but mentally ill ("GBMI").

The State seeks review of an order issued January 30, 2007, in which the Superior Court denied a motion made by prosecutors to preclude presentation by Cooke's defense counsel, during the guilt phase of the trial, of any evidence that would sup-

port a GBMI verdict or any other mental illness defense. The State asks this Court to adopt a *per se* rule that a defense attorney is prohibited from advancing a mental illness defense in the guilt phase if the defendant is opposed to that approach. Neither the State, nor the attorneys for Cooke, nor the trial judge's attorneys[1] were able to find a prior case from any jurisdiction deciding that exact issue.

In this expedited matter, we announced our decision yesterday because the defense was scheduled to begin today in the guilt phase of the ongoing capital murder trial. For the reasons stated in this Opinion, we have concluded that a writ of mandamus proceeding is not the proper procedural context in which to decide the issue raised by the State. Accordingly, the State's petition for the issuance of an extraordinary writ is denied.

### Facts[2]

On August 8, 2005, the grand jury indicted James Cooke, charging him with two counts of Murder in the First Degree, Rape in the First Degree, Burglary in the First Degree, Arson in the First Degree, Reckless Endangering in the First Degree two counts of Burglary in the Second Degree, Robbery in the Second Degree, and two counts of Misdemeanor Theft. The State is seeking the death penalty on each count of murder. Trial began in the Superior Court on Friday, February 2, 2007, before the Honorable Jerome O. Herlihy.

On Friday, January 19, 2007, Judge Herlihy conducted an office conference for the purposes of discussing jury selection and scheduling. Immediately prior to this conference, prosecutors had received information from defense counsel on the ques-

tion of presenting a mental illness defense at trial. After the various issues about jury selection, voir dire scheduling, and the use of uncharged misconduct evidence had been discussed, Judge Herlihy asked Cooke's counsel if there were any issues they wished to raise at that time. Counsel for Cooke, J. Brendan O'Neill, Esq., responded that "there's probably something we should bring up and Mr. Cooke and co-counsel [Kevin J. O'Connell, Esq.] and I have talked about it at length." As O'Neill explained, "Mr. Cooke has one idea about how to defend this case; his counsel has a different idea."

According to O'Neill, Cooke and defense counsel had discussed his defense at great length and had essentially "agreed to disagree." Cooke had been told by counsel that in the opinion of defense counsel, "it is his lawyer's discretion whether to present a particular defense...." More precisely, a decision about the purpose of the litigation rested with Cooke, but decisions about trial tactics and strategy were for counsel to make in the guilt phase of the trial. O'Neill had also told Cooke that, in any penalty hearing, counsel also made the decision about presentation of mitigation evidence.

In defense counsel's view, the defense could present evidence of mental illness to support a verdict of GBMI, yet have Cooke maintain his innocence, as he may testify that he is factually innocent of the crimes. Cooke has at all times maintained that another person committed the charged offenses. At this point, O'Neill observed that before presentation of evidence began, they were going to need to go "hash this out on the record, and go forward from there."

---

1. In accordance with Supreme Court Rule 43, the trial judge notified the Clerk of this Court that he would participate in this proceeding and retained outside counsel to represent him.

2. These facts are taken primarily from the State's petition in this matter.

Prosecutors then raised the question whether defense counsel could advance evidence of mental illness, over Cooke's objections and without undercutting a defense of actual innocence. O'Neill again observed that the question needed to be addressed formally before opening statements, including putting Cooke on the record. Prosecutors again broached this issue one week later on the afternoon of January 26.

In the view of prosecutors, it was hardly clear that defense counsel could choose to proceed with a particular mental illness defense when the defendant was adamant about his factual innocence. Given the uncertain state of the law, prosecutors indicated the State might ask the trial judge to certify questions to this Court. Before the Superior Court recessed for the day, prosecutors asked the trial judge to engage in a colloquy with Cooke, as had been suggested in the office conference on January 19. The defense took no position on whether the issue should be certified to this Court.

On January 26, the trial judge deferred any ruling on the issue. Before proceedings resumed on Monday, January 29, both the State and the defense had submitted additional memoranda to the trial judge. The trial judge indicated that no decision would be made on the issue that day.

On Tuesday, January 30, prosecutors moved to preclude the introduction of evidence, during the guilt phase, that would support a GBMI verdict or any other mental illness defense:

unless and until one of two things happens: either counsel tells Your Honor

that the extant dispute between Mr. Cooke and counsel about the pursuit of that defense has been resolved and the defendant now agrees with the presentation of the defense or unless and until Your Honor engages in a colloquy with the defendant and satisfies Your Honor that the defendant has assented to the [advancing of evidence of mental illness].

In the State's view, "the presentation of evidence supporting a GBMI verdict was sufficiently akin to a guilty plea to make the decision to present such evidence one for the defendant alone to make." The record, according to prosecutors, established that (i) defense counsel intended to pursue a verdict of GBMI; (ii) Cooke has expressly objected to his attorneys' plans; (iii) Cooke has told his attorneys "that he prefers to pursue a factual defense of innocence ... and also does not want to hear evidence of mental illness presented on his behalf"; and (iv) defense counsel intend to present evidence of mental illness supporting a GBMI verdict, during the guilt phase of the trial, notwithstanding Cooke's wishes. After hearing from defense counsel on the issue, the trial judge denied the State's application to preclude the defense from introducing evidence that would support a GBMI verdict.

### Defense Decision Debate

 A criminal defendant has authority over certain "fundamental decisions regarding the case, as to whether to plead guilty, waive a jury, testify in his or her own behalf, or take an appeal." [3] Counsel, however, bears principal responsibility for the conduct of the defense. [4] In particular, counsel has the responsibility for determining "what arguments to pursue," [5] and

---

**3.** *Jones v. Barnes,* 463 U.S. 745, 751, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983).

**4.** *Id.* at 753 n. 6, 103 S.Ct. 3308; *New York v. Hill,* 528 U.S. 110, 114–15, 120 S.Ct. 659, 145 L.Ed.2d 560 (2000).

**5.** *Hill,* 528 U.S. at 115, 120 S.Ct. 659 (citing *Jones,* 463 U.S. at 751, 103 S.Ct. 3308).

"what defenses to develop." [6]

According to the State, its petition presents one question: in the event of an irreconcilable disagreement between defense counsel and the defendant about a decision to seek a verdict of guilty but mentally ill, do the defendant's wishes prevail? The State is asking this Court to place the decision to pursue a mental illness defense in the category of issues upon which only the defendant can decide. Although the State has been unable to find any controlling precedent that is exactly on point, it makes an argument based upon Delaware Professional Conduct Rule 1.2, Scope of Representation, which states the following:

(a) [A] lawyer shall abide by a client's decisions concerning the objectives of representation and ... shall consult with the client as to the means by which they are to be pursued ... In a criminal case, the lawyer shall abide by the client's decision, after consultation with the lawyer, as to a plea to be entered, whether to waive jury trial and whether the client will testify.

Thus, Rule 1.2 expressly provides that the client is the ultimate decision maker as to whether to enter a plea, waive a jury trial or testify at trial. [7]

The State argues that pursuit of a GBMI verdict is the "functional equivalent of a plea of guilt with a request for mitigation of the nature of his sentence (death) or the manner it is to be served (partially in a mental facility ...)." In response to that argument, Cooke's attorneys assert the United States Supreme Court held in *Florida v. Nixon* that a concession of guilt is *not* the functional equivalent of a guilty plea. [8] In *Nixon*, the Supreme Court distinguished a concession of guilt from a guilty plea as follows:

Despite [defense counsel's] concession, Nixon retained the rights accorded a defendant in a criminal trial. *CF. Boykin*, 395 U.S. [238] at 242–243 and n. 4, 89 S.Ct. 1709[, 23 L.Ed.2d 274] (a guilty plea is "more than a confession which admits that the accused did various acts," it is a "stipulation that no proof by the prosecution need be advanced"). The State was obliged to present during the guilt phase competent, admissible evidence establishing the essential elements of the crimes with which Nixon was charged.... Further, the defense reserved the right to cross-examine witnesses for the prosecution and could endeavor, as [defense counsel] did, to exclude prejudicial evidence. See *supra*, at 558. In addition, in the event of errors in the trial or jury instructions, a concession of guilt would not hinder the defendant's right to appeal. [9]

In *Nixon*, the defense attorney conceded guilt and then presented evidence of mental illness during the penalty phase with the goal of avoiding a death sentence. He consulted several times with his client but never obtained explicit consent to conduct the defense in this manner. [10] Because the prosecution was still required to prove its case beyond a reasonable doubt, the United States Supreme Court held that conceding guilt during the guilt phase of a capital

---

6. *Wainwright v. Sykes*, 433 U.S. 72, 93 n. 1, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977) (Burger, C.J., concurring).

7. The request to expand the category of issues upon which only the defendant can decide is not without precedent. In *Red Dog v. State*, 625 A.2d 245, 247 (Del.1993), this Court expanded the list of situations where the defendant, rather than the attorney, is the ultimate

decision maker to include the decision whether to forego further appeals and to accept the death penalty.

8. *Florida v. Nixon*, 543 U.S. 175, 188, 125 S.Ct. 551, 160 L.Ed.2d 565 (2004).

9. *Id.*

10. *Id.* at 189, 125 S.Ct. 551.

murder trial was not the functional equivalent of a guilty plea.[11] Cooke's defense counsel submit their position is strengthened by the Supreme Court's ruling in *Nixon* because, unlike the attorney in that case, they will not concede that Cooke is guilty. Moreover, Cooke's attorneys assert that a GBMI verdict is an alternative that will only be reached by the jury if they are persuaded that the State has met its burden of proof.

"In *Wainwright v. Sykes*, the United States Supreme Court held that the attorney possesses the right to decide certain strategic and tactical decisions, including what witnesses to call, whether and *how* to conduct cross-examination, what trial motions should be made, and what evidence should be introduced."[12] Based on *Wainwright*, Cooke's counsel assert that the decision to present evidence of mental illness at Cooke's trial is a tactical one solely within their province. Cooke's defense counsel argue that the principle that the attorney is the one who chooses whether to pursue a mental health defense was solidified by the United States Supreme Court in *Florida v. Nixon*.[13]

### State Acknowledges Uncertainty

The State argues that the result in *Nixon* would have been different if the defendant had expressly objected. Nevertheless, with commendable candor the State acknowledges "the uncertain state of the law" underlying its claim. In fact, the State has consistently acknowledged that it does not have a clear right to the relief sought by its petition.

During the voir dire of prospective jurors on January 30, 2007, Deputy Attorney General Steve Wood raised the possibility of the State's making a request for certification. He noted that while no decision had been reached on whether to make such a request, the law was less than clear.

I think it is incumbent upon me to advise the Court that there is a growing sentiment, although not a decision yet, in our office to perhaps ask you to certify the question of essentially who is controlling the defense guilty but mentally ill versus not guilty to the Delaware Supreme Court.

The reason for that is, although we're still researching the matter, I don't know how to say this in legal language, but in a sense Your Honor is being called to make a decision in a capital case with no binding precedent that I can find or that we've found yet, not that I am a scholar here, but my reading of the cases that I've looked at, including *Florida v. Nixon*, the law review articles we've given Your Honor and everything else, is that this is about a 50–50 call, and I can't find a case right on point, and we haven't found one yet. . . .

\* \* \*

I am—I am—rarely standing up before a court am I more uncertain about the law, and I don't mean that to sound arrogant, and I'm not trying to sound

11. *Id.* at 188–89, 125 S.Ct. 551.

12. Phillips, Jean K. Gilles, and Joshua Allen, *Who Decides: The Allocation of Powers Between the Lawyer and the Client in a Criminal Case?*, 71–Oct. J. Kan. B.A. 28 (2002) (citing *Wainwright v. Sykes*, 433 U.S. 72, 93 n. 1, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977) (Burger, C.J., concurring)); *see also Strickland v. Washington*, 466 U.S. 668, 690–91, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

13. *See Nixon*, 543 U.S. at 190–91, 125 S.Ct. 551 (citing Goodpaster, *The Trial for Life: Effective Assistance of Counsel in Death Penalty Cases*, 58 N.Y.U.L. Rev. 299, 329 (1983); *Performance of Defense Counsel in Death Penalty Cases* § 10.9.1, Commentary (rev. 3d 2003), reprinted in 31 Hofstra L. Rev. 913, 1040 (2003)).

that way at all. It's just that I've read these cases, and boy, they're all over the map, and worse yet, I can't find anything, and I'm told yet that our office has not found anything that is factually on all fours; in other words, GBMI in a guilt phase versus Not Guilty by Reason of Insanity, or how one conduct the mitigation case in the penalty phase.

\* \* \*

[B]ut as I said before, the more I look at the cases, the more I realize that through no fault of any Appellate Court, of course, Your Honor has been in some sense cast adrift at sea, because we cannot find a case that we could site to you as binding precedent either way. What I instead found are cases that I think, in good faith, I could use to argue either side of the question.

In his email to Judge Herlihy on January 27, 2007, Mr. Wood wrote: "We remain very concerned about our inability to find clear post-*Nixon* authorities directly on point." During a conference with Judge Herlihy on January 30, 2007, Mr. Wood characterized the issue as "a close call" and the case law as "so murky." In his last communication with Judge Herlihy before the State filed its petition for a writ of mandamus, Mr. Wood wrote: "Your Honor is well aware that there is no controlling authority directly on point."

### Writ of Mandamus

 "A writ of mandamus is a command that may be issued ... to compel the performance of a duty to which the petitioner has established a clear legal right." [14] Because mandamus is an extraordinary remedy, the petitioner must establish a clear right to performance of the duty in question; no other adequate legal remedy is available; and the trial court has arbitrarily failed or refused to perform its duty. [15] "[I]n the absence of a clear showing of an arbitrary refusal or failure to act, this Court will not issue a writ of mandamus to compel a trial court to perform a particular judicial function, to decide a matter in a particular way, or to dictate the control of its docket." [16]

 In addition,

It is clear that only exceptional circumstances amounting to a "judicial usurpation of power" will justify the invocation of the extraordinary writ of mandamus. One who applies to an appellate court for a writ of mandamus must demonstrate to the reviewing court that the entitlement to the writ is both "clear and indisputable." [17]

### Conclusion

 The State has not demonstrated that it has a clear legal right to require the trial judge to preclude Cooke's defense attorneys from presenting evidence that would support a GBMI verdict. Accordingly, the State's petition for a writ of mandamus must be denied.

---

**14.** *Clough v. State,* 686 A.2d 158, 159 (Del. 1996).

**15.** *In re Bordley's Petition for a Writ of Mandamus,* 545 A.2d 619, 620 (Del.1988) (per curiam).

**16.** *Id.*

**17.** *In re Petition of State for a Writ of Mandamus,* 603 A.2d 814, 815 (Del.1992) (citations omitted).