**NONPRECEDENTIAL DISPOSITION**

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued June 3, 2021
Decided August 10, 2021

**Before**

DANIEL A. MANION, *Circuit Judge*

DIANE P. WOOD, *Circuit Judge*

MICHAEL B. BRENNAN, *Circuit Judge*

No. 20-2425

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff-Appellee*, | Appeal from the United States District Court for the Southern District of Indiana, Indianapolis Division. |
| *v.* | No. 1:16CR00097-001 |
| CHRISTOPHER REYNOLDS, *Defendant-Appellant*. | Sarah Evans Barker, *Judge*. |

**O R D E R**

On trial for drug offenses, Christopher Reynolds found himself wearing visible shackles as he testified before the jury. Although his lawyer had told the district judge that Reynolds was waiving his right to conceal the chains, Reynolds himself was not asked and did not otherwise directly indicate his consent. He was ultimately convicted of possessing methamphetamine with intent to distribute and two firearms offenses. On appeal, he argues that the district court committed a fundamental error by failing to obtain his personal waiver of his right not to appear in shackles. While we are troubled by several aspects of the course of events in this trial, we conclude that on the present

record Reynolds cannot prevail. Any complaint about counsel's strategy—or lack thereof—must be raised in a collateral proceeding under 28 U.S.C. § 2255, where the facts can be properly developed. We therefore affirm.

**I**

After the police caught Reynolds (who had a prior felony conviction) with two firearms and over 200 grams of methamphetamine, he wound up facing federal charges under 21 U.S.C. § 841(a)(1), 18 U.S.C. § 924(c), and 18 U.S.C. § 922(g). Initially, it appeared that the courtroom was prepared to deal with shackles, as both the defense and the prosecution tables were outfitted with curtains. But on one occasion, those precautions failed, largely it seems because of an unexpected change in the trial schedule.

Defense counsel had planned to call several witnesses, but some of them left for the day. The trial moved more quickly than expected, with the consequence that when the court was ready for Reynolds to proceed with his defense, his first witnesses were missing. The court thus had to decide what to do with an empty chunk of time. It held a bench conference (outside of both the jury's and Reynolds's hearing) to discuss the logistics of calling Reynolds right away:

> THE COURT: Is Mr. Reynolds in restraints? How am I going to get him across the courtroom?
>
> [DEFENSE COUNSEL]: Take a break.
>
> THE COURT: Well, I hate to do that. It's 20 after 4.
>
> ***
>
> THE COURT: Darn it. Counsel, I told you don't run out of witnesses.
>
> [DEFENSE COUNSEL]: That's why I'm willing to go forward with Reynolds.
>
> THE COURT: You're planning your own case. I don't know who's in the chute. Well, I guess we have to take a break so that he can walk across the courtroom.
>
> [DEFENSE COUNSEL]: Judge, I'm not trying to hide the fact that he is in custody.
>
> THE COURT: Well, you want to waive any interest that he has in proceeding in that fashion?
>
> [DEFENSE COUNSEL]: I don't know. I've not found the implications of that.

THE COURT: Well, Counsel, I cannot make this decision for you. You have to make that decision. You have to tell me you either waive it or I have to excuse everybody. So what do you want to do?

[DEFENSE COUNSEL]: So my choices are we're going to take a brief recess and come back with Reynolds or—

THE COURT: Well, we're going to keep going. It's only 20 after four.

\*\*\*

THE COURT: What do you want me to do right now?

[DEFENSE COUNSEL]: Well, Judge, let's go forward with Christopher Reynolds, and I will waive his interest in not disclosing that he's in chains.

THE COURT: Okay. Let the record reflect the waiver.

Doc. 168, Trial Tr., at 158–60. At that point, Reynolds, in chains, walked to the witness stand in full view of the jury.

Testifying in his own defense, Reynolds said that the police authorized him to have guns and drugs while he worked as an informant. For years before his arrest, he had furnished information about local drug dealers to an Indiana police sergeant, in exchange for lenience on criminal charges. He claimed to have gained access to targets of police investigations by posing as a drug dealer and buying drugs from them, and he asserted that the sergeant expressly condoned this activity. The sergeant contested this whole story, and he specifically denied instructing Reynolds to possess guns or drugs. The jury apparently found Reynolds's account too much to swallow; it convicted him, and the court sentenced him to 300 months' imprisonment.

There are a few additional shreds of evidence about the shackles. On the day the jury saw them but after it left for the day, the judge asked defense counsel whether he had consulted with Reynolds about waiving his right to keep the shackles hidden. Counsel replied that Reynolds had "left it to my discretion," and that the waiver was counsel's choice. In this court, Reynolds now says that counsel informed him that he would walk to the stand in chains, but that he wanted to protest this method of proceeding. He did not say anything, however, because counsel called him to the stand before he had the chance to make his views known.

## II

The parties start from one important common point: Reynolds had a constitutional right to conceal his shackles from the jury. See *Deck v. Missouri*, 544 U.S.

622, 626 (2005). But that is about all that they agree on. Reynolds contends that his *Deck* right is one of the small number of constitutional rights, such as the right to take the stand, that must be asserted personally by the defendant. If that were true, then we would evaluate this case knowing that Reynolds himself was never asked, and never said in open court, that he was waiving this right. Whether the colloquy we reproduced above suffices to preserve the personal-right argument is another matter, to which we turn in a moment.

If the *Deck* right falls in the more common set of trial rights for which counsel can make binding decisions, then we have a different case. Counsel plainly had qualms about having the jury view the shackles, and he appropriately suggested a couple of ways to solve that problem to the judge: let the jury take a brief break and return with Reynolds already in the witness chair (and presumably do the same when he finished), or stop trial proceedings for that day and pick up again the next day. The judge, however, appeared unsympathetic to these options. Ultimately, counsel unequivocally agreed on Reynolds's behalf to "waive his interest in not disclosing that he's in chains," and the court responded "Let the record reflect the waiver."

At no point did anyone suggest to the judge that counsel was categorically forbidden to make this decision on behalf of his client. Had that been done, the parties would have seen that the answer is not obvious. The Supreme Court has indicated, for example, that the decision whether the defendant would stand trial in prison clothing can be entrusted to counsel:

> Nothing in this record, therefore, warrants a conclusion that respondent was compelled to stand trial in jail garb or that there was sufficient reason to excuse the failure to raise the issue before trial. Nor can the trial judge be faulted for not asking the respondent or his counsel whether he was deliberately going to trial in jail clothes. … Under our adversary system, once a defendant has the assistance of counsel the vast array of trial decisions, strategic and tactical, which must be made before and during trial rests with the accused and his attorney. Any other approach would rewrite the duties of trial judges and counsel in our legal system.

*Estelle v. Williams*, 425 U.S. 501, 512 (1976). The Court concluded there that "although the State cannot, consistently with the Fourteenth Amendment, compel an accused to stand trial before a jury while dressed in identifiable prison clothes, the failure to make an objection to the court as to being tried in such clothes, for whatever reason, is sufficient to negate the presence of compulsion necessary to establish a constitutional violation."

*Id.* at 512–13. While this does not say in so many words that it is enough for counsel to raise this objection, that is the implication of the Court's holding. A counseled defendant, after all, does not raise his own objections at trial; he must entrust that job to counsel.

In his briefs in this court, Reynolds insists that visible shackling has such a powerful impact on a jury that it must be regarded as one of the fundamental rights entrusted exclusively to the defendant himself. But he concedes that the Supreme Court has never said this about shackling (nor has it rejected Reynolds's position). Instead, in *Gonzalez v. United States*, 553 U.S. 242 (2008), it reiterated and slightly elaborated on its rule from *New York v. Hill*, 528 U.S. 110 (2000): apart from "certain fundamental rights," including the right to counsel, the right to plead not guilty, the right to trial by jury, and the right either to testify or remain silent, counsel is empowered to waive any right that pertains to the conduct of the trial. *Id.* at 248–49 (quoting *Hill* and *Florida v. Nixon*, 543 U.S. 175, 187 (2004)). Again quoting from *Hill*, the Court gave as examples of matters entrusted to counsel such things as "what arguments to pursue," "what evidentiary objections to raise," "what agreements to conclude regarding the admission of evidence," and waiver of speedy trial rights. *Id.* at 248–49.

So was the decision to allow the jury briefly to see the shackles so fundamental that only Reynolds could make it, or is it better categorized as a tactical decision left to counsel? We see no obvious answer. On the one hand, a person might question how a defendant could possibly be assisted from a tactical standpoint by allowing the jury to see his shackles. On the other hand, a tactical explanation may not be quite so far-fetched after all—for example, a lawyer's strategy might be to make a plea for the jury's sympathy by showing that the defendant is the victim of oppressive prosecutorial tactics. Or, as in this case, the defense may be that the government has pulled the rug out from under the defendant, first using him as an informant and giving him permission to handle drugs and guns, and then indicting him for exactly the same behavior.

We do not see how we can assess whether the decision of Reynolds's lawyer to move forward and allow the jury to see the shackles briefly was tactical without knowing more about his reasons for taking that step. That, however, is impossible based on the record now before us. See generally *United States v. Cooper*, 243 F.3d 411, 418 (7th Cir. 2001) (Sixth Amendment confrontation rights). Cutting to the heart of the problem before us, we think that the issue whether counsel made a valid strategic decision here is more comparable to the issue of effective performance in the context of ineffective-assistance-of-counsel challenges than it is to anything else. See *Strickland v. Washington*, 466 U.S. 668 (1984). In essence, Reynolds is saying that if counsel indeed had the power to waive Reynolds's right to keep the shackles hidden, in his case counsel performed

ineffectively by doing so. But since the trial record does not reveal all of counsel's thinking, we cannot reliably determine whether counsel had (or lacked) sound reasons without some guesswork. That is why the Supreme Court has held that "[t]he better-reasoned approach is to permit ineffective-assistance claims to be brought in the first instance in a timely motion in the district court under § 2255." *Massaro v. United States*, 538 U.S. 500, 504 (2003).

Using the *Massaro* approach has some advantages. In a proceeding under section 2255, the parties would be able to develop a record on the presence or absence of strategic reasons for counsel's actions. If counsel had no such strategy and was simply trying to placate what he may have perceived as an impatient judge, then it is possible (though we do not decide this) that Reynolds may be able to show that the waiver reflected constitutionally ineffective performance. If counsel did have valid strategic reasons, then it would be appropriate to move to the question whether counsel's reasons were beside the point, because only Reynolds had the right to make this call.

We conclude, therefore, that in the appeal now before us Reynolds has not shown reversible error in the decision of the district court to accept the waiver of Reynolds's right not to appear before the jury wearing visible shackles. The judgment of the district court is AFFIRMED.