*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-1040**

State of Minnesota,
Respondent,

vs.

Erik Demetrius White, Sr.,
Appellant.

**Filed May 2, 2016
Affirmed
Jesson, Judge**

St. Louis County District Court
File No. 69DU-CR-14-1267

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Mark S. Rubin, St. Louis County Attorney, Jonathan D. Holets, Assistant County Attorney, Duluth, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Jennifer Workman Jesness, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Jesson, Presiding Judge; Peterson, Judge; and Kirk, Judge.

**U N P U B L I S H E D   O P I N I O N**

**JESSON**, Judge

On appeal from his convictions of second-degree controlled-substance crime,

appellant Erik Demetrius White, who was serving an unrelated sentence in Wisconsin

and had requested disposition under the Interstate Agreement on Detainers, argues that the district court erred by failing to dismiss the complaint because he was not brought to trial within the detainer agreement's 180-day time period, and good cause did not exist for the delay. He also argues that the district court abused its discretion by admitting evidence of a cooperating witness's recorded statements to police under the residual exception to the hearsay rule. Because we conclude that, by failing to object when trial was scheduled beyond the 180-day period, White waived his right to challenge the disposition time period, and because the recorded statements met the requirements for admission under the residual hearsay exception, we affirm.

**FACTS**

On January 29, 2013, police executed a search warrant on a hotel room in downtown Duluth where Q.L. was staying. They discovered marijuana, heroin, and cash. Q.L. agreed to act as an informant and perform controlled buys for the police from the hotel that day, purchasing drugs from a person whom he knew as "Little D." In the first controlled buy, the informant was to purchase five grams of heroin for $1,000. Police provided the informant with marked cash to perform the controlled buy at about 11:00 a.m. They searched him, did not find drugs or money, and equipped him with an audio recording device and a button camera, which would show video without sound.

The controlled buy was to take place in a hallway of the hotel. Police, who stayed in the hotel room, did not directly observe the buy and were unable to identify "Little D" as completing the buy, but they could hear what happened by audio. One officer in the hotel room saw a taxi pull up, with a person exiting it and going into the hotel. Another

2

officer conducting video surveillance in a van saw a cab pull in and a male exit the vehicle, go into the hotel, and return to the cab. An officer followed the cab to a casino and saw its passenger, whom he identified as White, enter the casino and sit at a blackjack table.

The informant returned from the hotel hallway to the hotel room and surrendered to officers a substance that was later identified as heroin. He was then searched again; the officers found no money or other drugs on his person. An officer testified that "pretty shortly" after the controlled buy, police conducted a recorded post-buy interview with the informant, going over details of the buy that had just occurred.

Officers then started working on the details of a second controlled buy from the same person that afternoon. The informant spoke to "Little D" about another drug purchase on the phone about 1:30 p.m. The same protocol was used, and the informant agreed to purchase five grams of heroin for $1,000. Again police could not directly see "Little D" pass drugs to the informant, but monitored the buy by radio. One officer observing from the hotel room saw a car pull up and saw the informant reach into its open window and hand money to a person sitting in the rear passenger seat. The officer conducting surveillance in the van saw a black car pull in and a person exit the hotel, conduct a dialogue through that car's window, and return to the hotel. The car then left. Again the informant returned to the hotel room and surrendered heroin. He was searched, no other drugs or money were found, and the electronic recording equipment was removed from him. Officers then conducted a second recorded post-buy interview.

In April 2014, the state charged White with two counts of second-degree controlled-substance crime, unlawful sale of heroin, in violation of Minn. Stat. § 152.022 1(1) (2012). On July 1, 2014, White, who was incarcerated in a Wisconsin prison on an unrelated offense, requested disposition under the Interstate Agreement on Detainers, Minn. Stat. § 629.294 (2014).

The Minnesota prosecutor received the letter requesting disposition on July 7. On August 20, White, then represented by a public defender, made his first appearance in St. Louis County district court, reserved his right to a speedy trial, and waived the 28-day omnibus-hearing period. On September 10, White appeared for an omnibus hearing with a public defender, waived the omnibus-hearing period again, and requested a continuance because he had retained a private attorney who was unable to appear. On September 24, White appeared with his private attorney, who stated that he was still trying to obtain discovery from the public defender's office. The district court granted a two-week continuance.

On October 8, at another omnibus hearing, defense counsel stated that he was waiting for additional discovery from the state and asked that the matter be reset. The district court stated that, under the circumstances, it would give the defense one more continuance, but it wished to keep the case moving forward. On October 29, White appeared for another hearing with counsel, who stated that he had just received additional discovery, and requested another continuance for "a few weeks."

On November 17, defense counsel requested another continuance by e-mail, stating that he was scheduled for a hearing in Hennepin County the day of the next

scheduled omnibus hearing. The prosecutor did not object, but reminded the district court that White was on a detainer that expired in January. The matter was rescheduled for December 17.

On December 17, White and his counsel appeared for the omnibus hearing. White waived omnibus issues and entered a not guilty plea. Defense counsel asked to have the matter set on for a settlement conference and then trial. The case was assigned to a trial judge and set for settlement conference on February 2, 2014. Neither White nor defense counsel objected.

On December 29, the parties appeared before the district court on the prosecutor's request for a finding of good cause to continue the case past the 180-day detainer-agreement time limit, which would end on January 2, 2015. He stated that some delay was attributable to discovery transfer and some to continuances requested by the defense. Defense counsel argued that the state's failure to provide timely discovery had caused delays, but acknowledged that the defense had also requested continuances. The district court found good cause, but stated that the matter should be set for trial as soon as possible.

On January 16, 2015, the prosecutor again requested the district court to find good cause to move beyond the 180-day time limit. He acknowledged that a video of the controlled buy was not turned over to the defense until October 29 because it identified the confidential informant, and he wanted to advise defense counsel that a plea offer would not be made once the identity of the informant was disclosed. The defense argued

that this policy was unjust. The district court found good cause for the delay and scheduled trial for February 17.

At White's jury trial, the state moved to admit the two post-buy recorded interviews under Minnesota Rule of Evidence 807, the residual exception to the hearsay rule, because the prosecutor had just learned that the informant would be testifying that he did not recall the controlled buys. The state argued that the interviews had circumstantial guarantees of trustworthiness because they were made immediately after the controlled buys, they were recorded, the informant could be cross-examined, and they were consistent with other evidence.

At trial, Q.L. testified and identified White as "Little D" in the courtroom and as the person shown in still photos taken from police videotapes of the controlled buys. One photo, from the first buy, shows "Little D" from a few feet away, and the other photo, from the second buy, shows him from within a foot, sitting in the rear passenger seat of a car. But the informant testified that he did not recall whether he had stayed at the hotel where the buys occurred or whether he had worked as a cooperating witness. He believed that he may have had memory loss due to his addiction to heroin around the time of the buys and denied that he had bought heroin from "Little D."

The district court admitted the audio post-buy interviews into evidence. The district court found that "this is exactly . . . the situation that [rule 807] is designed for"; that the interviews were made immediately after the events, and the witness now had difficulty recalling what occurred or his presence at the events. The district court found that the audio was more probative on the point for which it was offered than other

6

evidence that the state could procure by reasonable efforts. The district court also found that the interests of justice would be served by admitting the statement into evidence because the informant could otherwise state that he did not recall the transaction to prevent his testimony from reaching the jury. The district court found that the statements may possibly also be admissible under Minnesota Rule of Evidence 801(d)(1)(d), the present-sense-impression exception to the hearsay rule, because they were made immediately after the event.

The defense called no witnesses, and White elected not to testify. The jury found White guilty of both counts, and the district court imposed concurrent sentences of 68 months on the first count and 88 months on the second count. This appeal follows.

## D E C I S I O N

## I

The Interstate Agreement on Detainers is a compact among 48 states, the federal government, and the District of Columbia to establish procedures for resolving one jurisdiction's outstanding criminal charges against a prisoner who is incarcerated in another state. *State v. Wells*, 638 N.W.2d 456, 459 (Minn. App. 2002), *review denied* (Minn. Mar. 19, 2002). Minnesota is a party to the agreement. Minn. Stat. § 629.294, subd. 1. The agreement's purpose is to require prompt disposition of outstanding charges so that persons incarcerated in other jurisdictions receive a speedy trial on those charges. *State v. Burks*, 631 N.W.2d 411, 412 (Minn. App. 2001).

Under the agreement, "if a prisoner requests final disposition of out-of-state charges for which a detainer has been lodged against him, the prisoner shall be 'brought

to trial' on the out-of-state charges within 180 days after the request is received or the charges will be dismissed." *State v. Kurz*, 685 N.W.2d 447, 450 (Minn. App. 2004) (quoting Minn. Stat. § 629.294, subd. 1, arts. III(a), V(c)), *review denied* (Minn. Oct. 27, 2004).[1] But the district court may grant an extension of the time for trial if it determines at a hearing that good cause has been shown. Minn. Stat. § 629.294, subd. 1, arts. III(a), IV(c). And the 180-day time period is also subject to waiver, either personally by the defendant or by defense counsel. *Wells*, 638 N.W.2d at 460-61. That waiver is not limited to "explicit" or "affirmative" conduct, but may also be implicit, such as when defense counsel agrees to a trial date beyond the 180-day time limitation. *New York v. Hill*, 528 U.S. 110, 115-118, 120 S. Ct. 659, 663-66 (2000); *Wells*, 638 N.W.2d at 461.

This court reviews de novo whether a prisoner waived the 180-day time period under the agreement. *Wells*, 638 N.W.2d at 460. White argues that, in September 2014, when his new counsel was unable to be present, he waived only his right to an omnibus hearing within 28 days, not the protection of the agreement. But the record shows that, at a hearing on December 17, the district court scheduled a settlement conference for February 2, a date beyond the 180-day detainer time period. Neither White nor defense counsel, who were both present, objected to that scheduling. We conclude that, under these circumstances, when defense counsel failed to object to a trial scheduled beyond the

---

[1] "A detainer is a request filed by a criminal justice agency with the institution in which a prisoner is incarcerated, asking the institution either to hold the prisoner for the agency or to notify the agency when release of the prisoner is imminent." *Carchman v. Nash*, 473 U.S. 716, 719, 105 S. Ct. 3401, 3403 (1985).

180-day period, the defense implicitly waived the agreement's time limitations. *See Hill*, 528 U.S. at 118, 120 S. Ct. at 666.

The district court also found that good cause existed to extend the time for trial. Whether good cause exists to schedule a trial beyond the 180-day period is within the discretion of the district court, and we will not disturb that decision absent an abuse of discretion. *See State v. Wilson*, 632 N.W.2d 225, 228 (Minn. 2001) (stating this standard with respect to the analogous Uniform Mandatory Disposition of Detainers Act).

White argues that the district court abused its discretion by extending the time for trial beyond the 180-day detainer-agreement time period. He maintains that the district court should not have granted an extension because "the delay was attributable solely to the state's failure to comply with its discovery obligations." The record shows otherwise. While the defense requested a continuance on October 8 because discovery from the state was not complete, the defense requested three additional continuances unrelated to the state's provision of discovery: (1) on September 10, 2014, due to obtaining a new attorney; (2) on September 24, 2014, because that attorney had not received discovery from the public defender; and (3) on November 17, 2014, because of defense counsel's court schedule. Further, as discussed above, at the December 17 hearing, defense counsel failed to object to a settlement conference scheduled beyond the 180-day period. Therefore, we conclude that, in addition to White's waiver of the detainer-agreement time period, the district court did not abuse its discretion by finding that good cause existed to extend the matter beyond the 180-day period.

## II

White argues that the district court abused its discretion by admitting the two post-controlled-buy interviews into evidence. The district court has sound discretion over evidentiary matters, and we will not reverse its decision to admit evidence unless an appellant shows both a clear abuse of discretion and resulting prejudice. *State v. Amos*, 658 N.W.2d 201, 203 (Minn. 2003).

Because the interviews are statements made out of court that are offered to prove the truth of the matter asserted, they are hearsay. Minn. R. Evid. 801(c). Hearsay is generally not admissible at trial. Minn. R. Evid. 802. But it may be admitted if it falls within an exception to the hearsay rule. *State v. DeRosier*, 695 N.W.2d 97, 104 (Minn. 2005). The district court admitted the statements under the residual hearsay exception, Minnesota Rule of Evidence 807.

Rule 807 provides that, if a statement is not specifically covered by listed exceptions to the hearsay rule, but has "equivalent circumstantial guarantees of trustworthiness" and meets additional conditions, it may be admitted under the residual hearsay exception. For instance, if evidence fits within the spirit of a specific hearsay exception, but does not meet the express requirements of that exception, it may be considered for admission under rule 807. 11 Peter N. Thompson, *Minnesota Practice* § 807.01 (4th ed. 2012). In examining whether a proffered statement has equivalent circumstantial guarantees of trustworthiness to other evidence admitted under the rules, the district court examines the totality of the circumstances surrounding the statement. *State v. Robinson*, 718 N.W.2d 400, 408 (Minn. 2006) (construing Minn. R. Evid.

10

803(24), a predecessor to rule 807). Rule 807 also prescribes additional requirements: (1) that the statement is offered to prove a material fact; (2) that it is more probative on that point than other evidence that could be procured through reasonable efforts, and (3) that the general purpose of the evidentiary rules and the interests of justice will best be served by its admission. Minn. R. Evid. 807.

We first address whether the statement has sufficient guarantees of trustworthiness equivalent to those of other nonhearsay statements or statements falling within a hearsay exception. Here, the post-buy recorded statements are similar to those admissible under the hearsay exception for past recollection recorded, Minn. R. 803(5). Under that exception, an adverse party may seek admission of a memorandum or record relating to a matter about which a witness had previous knowledge, but now lacks sufficient recollection to testify fully and accurately. Minn. R. Evid. 803(5). Q.L.'s recorded statements refreshed his recollection of the controlled buys, which he could not recall at the time of trial. But because the state sought to admit the statements of the informant, its own witness, the precise requirements of rule 803(5) were not met. *See id.*

In addition, the post-buy interviews come close to qualifying as present-sense impressions under Minn. R. Evid. 801(d)(1)(D). That rule provides that statements are non-hearsay if they describe or explain "an event or condition made while the declarant was perceiving the event or condition or immediately thereafter." Minn. R. Evid. 801(d)(1)(D). In interpreting this rule, the Minnesota Supreme Court has held that statements made within a few minutes of an accident were close enough in time to qualify as present-sense impressions, but those made nearly an hour later were too remote

11

in time to qualify. *State v. Pieschke*, 295 N.W.2d 580, 582, 584 (Minn. 1980). Here, an officer testified that one statement was recorded "pretty shortly" after the controlled buys. While the record is unclear as to the amount of time that elapsed between the statements and the controlled buy, their close proximity in time provides circumstantial guarantees of trustworthiness similar to those of present sense impressions admissible under rule 801(d)(1)(D).[2]

In addition to examining other hearsay exceptions and non-hearsay statements, we also look more generally at the totality of the circumstances to assess the circumstantial guarantees of trustworthiness of the proffered statements. *Robinson*, 718 N.W.2d at 408. In making this analysis, one important factor to be considered is whether the person making the statement was under oath and subject to cross-examination. *State v. Davis*, 820 N.W.2d 525, 537 (Minn. 2012); *see also Robinson*, 718 N.W.2d at 409 (holding that the Confrontation Clause did not bar consideration of evidence corroborating a witness's out-of-court statements because the witness testified at trial). Although the informant was not sworn or subject to cross-examination when he made the statements, their reliability is enhanced because he testified at trial, so that the defense had the opportunity to cross-examine him then on their contents, should it choose to do so. *See State v. Holliday*, 745 N.W.2d 556, 566 (Minn. 2008) (stating that "the Confrontation Clause guarantees an *opportunity* for effective cross-examination, not cross-examination that is

---

[2] Because we conclude that the post-buy recordings meet the requirements for admission under rule 807, we do not decide whether they also qualify as present-sense impressions under rule 801(d)(1)(D).

effective in whatever way, and to whatever extent, the defense might wish" (quotation omitted)).

When assessing the reliability of a statement, the district court considers other factors as well, such as the declarant's motivation to make the statement; his relationship to the parties; his personal knowledge; whether the declarant recanted the statement; the declarant's character for truthfulness and honesty; and the existence of corroborating evidence. *Davis*, 820 N.W.2d at 537. "The relevant circumstances under rule 807 are those circumstances actually surrounding the making of the statements." *State v. Ahmed*, 782 N.W.2d 253, 260 (Minn. App. 2010) (quotation omitted).

White argues that Q.L.'s post-buy recorded statements do not have sufficient guarantees of trustworthiness because he was motivated to provide information to minimize the consequences of his own criminal conduct; he could not remember the details of the controlled buys at trial; and he had negligible character for truthfulness. But the informant had personal knowledge of the controlled buys, which occurred in his presence. He returned to the hotel room with drugs immediately after the buys, and he made the statements shortly afterwards. Further, he was motivated to be honest because the police had evidence implicating him in other drug transactions, which they could have used to his detriment if they discovered he was lying. We therefore agree with the district court that the statements, which were similar to those admissible under rules 803(5) and 801(d)(1)(D), had sufficient circumstantial guarantees of trustworthiness.

We next consider the additional requirements of rule 807: that a statement is offered for a material fact and is more probative than other evidence obtainable through

13

reasonable efforts, and that its admission will serve the purpose of the rules of evidence and the interests of justice. Minn. R. Evid. 807. White argues that the interviews were not more probative than the state's additional evidence and that the interests of justice were not served by admitting them. But the informant's post-buy interview statements were more probative than the state's other evidence because police surveillance did not directly record drugs and cash changing hands, and the statements served the purpose of the rules of evidence and the interests of justice because they helped the jury to place his testimony that he did not recall the transactions "in proper perspective." Minn. R. Evid. 607 cmt. Therefore, the additional requirements for admitting the statements under rule 807 are met.

White finally argues that the district court made insufficient findings in support of its ruling. When ruling on the admissibility of evidence under the residual hearsay exception, "[t]he court should make findings explicitly on the record unless there is a waiver, explicitly or by silence, or the basis of the ruling is obvious." *DeRosier*, 695 N.W.2d at 105 (quotation omitted). Here, while it would have been better practice for the district court to make more detailed findings, its findings refer to the requirements of rule 807 and adequately reflect the application of the record to those requirements. They do not provide a basis for reversal.

"[T]he district court has broad discretion in resolving evidentiary matters." *State v. Griffin*, 834 N.W.2d 688, 695 (Minn. 2013) (quotation omitted). Here, the district court examined the trustworthiness of the statements under the totality of the circumstances and applied the rule's additional reliability requirements. It did not abuse

14

its broad discretion in admitting evidence of the post-buy recorded interviews under the residual hearsay exception.

**Affirmed.**