# IN THE COURT OF APPEALS OF IOWA

No. 18-1986
Filed April 1, 2020

**D'ANGELO MARQUIS GOODS,**
Applicant-Appellant,

**vs.**

**STATE OF IOWA,**
Respondent-Appellee.

_____

Appeal from the Iowa District Court for Mills County, Richard H. Davidson, Judge.

D'Angelo Goods appeals the denial of his application for postconviction relief. **AFFIRMED.**

Martha J. Lucey, State Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, and Thomas E. Bakke, Assistant Attorney General, for appellee State.

Considered by Bower, C.J., and Greer and Ahlers, JJ.

**BOWER, Chief Judge.**

D'Angelo Goods appeals the denial of his application for postconviction relief (PCR). Goods claims both trial counsel and PCR counsel provided ineffective assistance and he also challenges his restitution order based on his reasonable ability to pay. We conclude Goods has not established he was provided with ineffective assistance of counsel at trial or in his postconviction hearing and the restitution claim is not properly before us. We affirm.

## I. Background Facts & Proceedings

On August 24, 2015, Goods filed written *Alford* guilty pleas[1] to charges of sexual abuse in the third degree and willful injury causing bodily injury.[2] During the plea hearing, Goods withdrew his plea. The court took a break while Goods and his counsel conferred. While still off the record, Goods's counsel asked to move the plea hearing to chambers, and the court partially closed the courtroom— removing Goods's family and friends, though the family of the victim, B.A., remained. Once back on the record, Goods's counsel made the following statement:

> Your Honor, I just wanted to make record of the fact that—and I alluded to this earlier, that I did go down on Friday, explained the plea agreement again to Mr. Goods. He did sign the written pleas.
> I think what happened today, and I'd just like the record to reflect, he had a lot of family members here. There's not really a co-defendant, but there is. They're charged in separate trial informations, and that person's family was also here today, and it

---

[1] In an *Alford* plea, a defendant enters a guilty plea acknowledging the State has strong evidence of actual guilt, but claims innocence or otherwise does not admit guilt to the underlying facts establishing the crime. *See North Carolina v. Alford*, 400 U.S. 25, 37–38 (1970); *State v. Burgess*, 639 N.W.2d 564, 567 n. 1 (Iowa 2001).

[2] In exchange for Goods's plea, the State agreed to reduce the original charges of sexual abuse in the first degree and willful injury resulting in serious injury.

> gave my client pause as to whether to go through with the plea or not.
>
> And after talking to him back in the attorneys' room, I think part of that—that played a big part in him kind of telling the Court that he didn't want to go through it. And after talking to him again, he's indicated that he does want to go through with the plea as filed and as the county attorney stated earlier.

Counsel also told the court depositions of B.A. and witnesses had not been taken due to the State's timeline for the plea offer and Goods understood he was entering his plea without any potential information that might have been discovered during depositions. The State responded all discovery had been provided to Goods and witnesses were available for depositions prior to the plea.

The court asked Goods if he wished to plead guilty to each count, and Goods answered, "Yes." The court advised Goods of his trial rights, including the right to a public trial: "By pleading guilty today do you understand that you are giving up your right to a speedy and public trial by jury?" Goods answered, "Yes." When the court asked if he was "making this plea knowingly, and voluntarily, and of [his] own free will," Goods again answered, "Yes." The court did not specifically ask if Goods was waiving his right to a public plea hearing. The court accepted Goods's pleas.

On September 21, the court sentenced Goods to consecutive ten-year and five-year terms of imprisonment; suspended a fine on the sexual-abuse count; placed Goods on lifetime parole pursuant to Iowa Code section 903B.1 (2015); and ordered Goods to pay court costs, attorney fees, and reimbursement to the crime victim assistance program. Goods did not file a direct appeal.

On March 9, 2016, Goods filed an application for postconviction relief. A trial was held on December 21, 2017. After the court issued its ruling on August 3,

2018, Goods filed a motion to enlarge, amend, or modify the ruling asking the court to reconsider in light of the actual innocence principle set forth in *Schmidt v. State*, 909 N.W.2d 778 (Iowa 2018). Goods asserted the evidence showed he wished to proceed to trial and he had not knowingly, intelligently, and voluntarily waived his right to an open trial. Goods also filed a pro se motion requesting further findings regarding evidence he claims his counsel did not share with him and asserting prejudice. The court denied both motions. Goods appeals.

## II. Standard of Review

We review ineffective-assistance-of-counsel claims de novo. *State v. Brubaker*, 805 N.W.2d 164, 171 (Iowa 2011). "We review restitution orders for correction of errors at law." *State v. Gross*, 935 N.W.2d 695, 698 (Iowa 2019).

## III. Analysis

Goods raises multiple issues on appeal. Goods claims counsel in his PCR action (PCR counsel) provided ineffective assistance by failing to assert trial counsel's failure to assert his plea for willful injury causing bodily injury lacked a factual basis. Next, he contends trial counsel was ineffective for requesting and failing to object to the partial closure of the courtroom during his plea hearing and for failing to provide Goods with information from counsel's discovery and investigation. Finally, Goods claims the court did not enter a final restitution order after considering his reasonable ability to pay and the State has improperly enforced a temporary order.

"Ineffective assistance of counsel constitutes deficient performance by counsel resulting in prejudice, with performance being measured against an objective standard of reasonableness, under prevailing professional norms." *State*

*v. Clay*, 824 N.W.2d 488, 494–95 (Iowa 2012) (quotation marks and citations omitted); *see also Strickland v. Washington*, 466 U.S. 668, 687 (1984). "We begin with the presumption that the attorney performed competently and avoid second-guessing and hindsight." *Brubaker*, 805 N.W.2d at 171 (quotation marks and citations omitted). We need not address both elements if either is not proved by a preponderance of the evidence. *Ledezma v. State*, 626 N.W.2d 134, 142 (Iowa 2001) (noting failure to prove either element dooms the claim).

### A. PCR Counsel.

First, Goods claims his PCR counsel provided ineffective assistance by failing to assert an ineffective-assistance claim against trial counsel relating to the factual basis of Goods's plea to willful injury causing bodily injury. For conviction of this offense, the State must establish the action (1) was not justified, (2) was intended to cause serious injury, and (3) caused bodily injury to another. *See* Iowa Code § 708.4(2). Goods contends that while the first and third elements were established, there was not a sufficient factual basis established for intent to cause serious injury.

"Where a factual basis for a charge does not exist, and trial counsel allowed the defendant to plead guilty anyway, counsel has failed to perform an essential duty." *State v. Schminkey*, 597 N.W.2d 785, 788 (Iowa 1999). "On a claim that a plea bargain is invalid because of a lack of accuracy on the factual-basis issue, the entire record before the district court may be examined." *State v. Finney*, 834 N.W.2d 46, 62 (Iowa 2013). "We review (1) the prosecutor's statements, (2) the defendant's statements, (3) the minutes of testimony, and (4) the presentence report, if available at the time of the plea, to determine if the record supports a

factual basis for the plea." *Rhoades v. State*, 848 N.W.2d 22, 29 (Iowa 2014). "When analyzing the record, we do not require the record 'to show the totality of evidence necessary to support a guilty conviction,' but only that the record demonstrates the facts to support the elements of the offense." *Id.* (citation omitted). "[T]he facts and circumstances surrounding the act, as well as any reasonable inferences to be drawn from those facts and circumstances, may be relied upon to ascertain the defendant's intent." *Schminkey*, 597 N.W.2d at 789.

Goods concedes the minutes of testimony show B.A. did suffer a bodily injury. Specific intent is "seldom capable of direct proof, but may be shown by reasonable inferences drawn from facts established." *State v. Chatterson*, 259 N.W.2d 766, 769–70 (Iowa 1977). "[D]efendants will ordinarily be viewed as intending the natural and probable consequences that ordinarily follow from their voluntary acts." *State v. Bedard*, 668 N.W.2d 598, 601 (Iowa 2003). The minutes described B.A.'s expected testimony—that Goods pushed down on her throat with his forearm during the sex act. An officer was set to testify she observed and photographed injuries sustained by B.A., and an expert witness would explain the high risks associated with neck compression as alleged by B.A. The facts and circumstances of this case together with the reasonable inferences drawn from them demonstrate the facts to support the element of "intent to cause serious injury."

Trial counsel did not breach a duty in failing to challenge the factual basis for the willful injury charge. Consequently, we find PCR counsel was not ineffective. *See Brubaker*, 805 N.W.2d at 171 ("We will not find counsel incompetent for failing to pursue a meritless issue.").

**B.  Trial counsel.**

*1.  Partial closing of plea hearing.*  Goods claims his trial counsel provided ineffective assistance by requesting the court take his plea in chambers and failing to object when the court excluded Goods's family and friends from the courtroom during his plea hearing.  The State counters that even if Goods had a right to a public plea hearing (which the State does not concede), he waived any objection to the partial closure.

For purposes of our analysis, we will assume without deciding the right to a public-trial applies to a plea hearing.  *Cf.* Iowa R. Crim. P. 2.8(2)(b) ("Before accepting a plea of guilty, the court must address the defendant personally in open court . . . .").  The PCR court found the partial closure "was contrary to the guarantees found in both the federal Constitution and the state constitution" and Goods had established his counsel violated his duty by not requiring an open courtroom.  However, the court concluded Goods had waived his right to a public trial through his consent and could not later claim prejudice.  As the determining factor below, we will consider the prejudice prong first.

Goods claims the partial closure resulted in a structural error and prejudice could be presumed under either the federal or state constitution.  The United States Supreme Court has noted "while the public-trial right is important for fundamental reasons, in some cases an unlawful closure might take place and yet the trial still will be fundamentally fair from the defendant's standpoint."  *Weaver v. Massachusetts*, 137 S. Ct. 1899, 1910 (2017).

In *Weaver*, the Supreme Court cautioned,

> [W]hen a defendant raises a public-trial violation via an ineffective-assistance-of-counsel claim, *Strickland* prejudice is not shown automatically. Instead, the burden is on the defendant to show either a reasonable probability of a different outcome in his or her case or, as the Court has assumed for these purposes, to show that the particular public-trial violation was so serious as to render his or her trial fundamentally unfair.

137 S. Ct. at 1911 (citation omitted). Therefore, under the federal constitution, Goods must establish prejudice. Iowa does not currently recognize a separate standard under the state constitution, and we believe such a ruling is best reserved to our supreme court. *See State v. Short*, 851 N.W.2d 474, 492 (Iowa 2014) ("[W]e jealously protect this court's authority to follow an independent approach." (internal quotation marks omitted)).

Because Goods raised this issue for the first time as a postconviction ineffective-assistance-of-counsel claim, he must show prejudice through a reasonable probability of a different outcome or a fundamental unfairness to the plea hearing. *See State v. Levy*, No. 18-0511, 2020 WL 567696, at *5–6 (Iowa Ct. App. Feb. 5, 2020) (examining the need to establish prejudice in a courtroom-closure ineffective-assistance-of-counsel claim). Goods asserts the prejudice suffered was that he did not knowingly and voluntarily waive his right to a public hearing.

The right to a public trial can be waived. *See Singer v. United States*, 380 U.S. 24, 35 (1965) (noting a defendant can, under some circumstances, waive his constitutional right to a public trial); *see also, e.g.*, *Kyle v. State*, 364 N.W.2d 558, 561 (Iowa 1985). *Cf. New York v. Hill*, 528 U.S. 110, 114 (2000) ("We allow waiver of numerous constitutional protections for criminal defendants that also serve broader social interests."). Some fundamental rights must be waived personally

by a defendant in an informed way, but other rights may be waived by action of counsel. *Hill*, 528 U.S. at 114. Goods was aware of the general right to a public trial and waived that right as part in the post-partial-closure plea colloquy with the court.

For "many decisions pertaining to the conduct of the trial, the defendant is deemed bound by the acts of his lawyer-agent and is considered to have notice of all facts, notice of which can be charged upon the attorney." *Id.* at 114–15 (quotation marks and citations omitted); *State v. LeFlore*, 308 N.W.2d 39, 41 (Iowa 1981) ("[G]enerally a defendant is bound by defense counsel's action within the scope of [limited] authority taken on behalf of the defendant."). "Absent a demonstration of ineffectiveness, counsel's word on such matters [relating to the conduct of trial] is the last." *Hill*, 528 U.S. at 115.[3] "Later examination of a guilty plea proceeding based on a plea rendered with the advice of counsel focuses on the voluntariness of the plea and the competency of the attorney who rendered such advice. The merits of other claims of constitutional violation which occurred prior to the guilty plea will not be addressed." *Id.*

During an off-the record colloquy, counsel asked if Goods wanted his family taken out of the courtroom, and Goods replied, "I don't care, man. I don't want to see my family—I don't want my family to have to see me get incarcerated by taking this plea." Counsel reasonably interpreted this as a desire to remove Goods's family from the plea hearing. Counsel then took action to comply with Goods's wish. Goods waived his right to a public plea hearing, and Goods is bound by the

---

[3] For certain fundamental rights, including the right to counsel and right to plead guilty, only the defendant can make an informed waiver. *Hill*, 528 U.S. at 114–15.

acts of his lawyer that were performed with what reasonably appeared to be full consent of Goods. Additionally, Goods has not shown the partial closure of the courtroom led to a fundamentally unfair proceeding. Therefore, Goods has failed to establish he was prejudiced by the partial closure of the courtroom.

Because we find Goods was not prejudiced by the closure, we need not determine whether his counsel performed deficiently by requesting the closure and not objecting to the court's procedure.

*2. Failure to provide discovery information.* Goods next claims his counsel did not provide him with critical information from discovery and the investigation, rendering his guilty pleas involuntary. He testified,

> How can I intelligently take a plea when I'm not presented all the available evidence that I could use for my advantage, you know. I didn't willingly take the plea because of the fact that I did not want to take the plea in the first place. But the reason why I took it is because of the fact that I felt I had no other choice.

The evidence Goods refers to is a hospital record where B.A. described what happened to the medical personnel where the other male involved had his arm on B.A.'s neck, not Goods. Goods contends he did not know of the record and so his guilty pleas were not knowing, intelligent, and voluntary.

The decision to plead guilty before all the evidence is known is difficult and "characterized by uncertainty." *Schmidt*, 909 N.W.2d at 786–87. We expect a reasonably competent attorney to evaluate the risk, and the advice following that evaluation may be mistaken without being ineffective. *See id.*

Goods admitted to knowing of a rumor relating to potentially beneficial information in a medical record. His counsel testified in deposition to having seen a video of B.A. corroborating the police report version—where it was Goods's arm

on her neck. Counsel also testified he would have discussed the hospital records with Goods, but may not have provided him a copy.

Goods has not shown his counsel failed to properly evaluate the facts or inform Goods of the relevant facts to show the advice provided regarding the evidence "was not within the range of competence demanded of attorneys in criminal cases." *See State v. Carroll*, 767 N.W.2d 638, 642 (Iowa 2009). Therefore, Goods has not established he received ineffective assistance of counsel.

### C. Restitution order.

For the first time on appeal from denial of his application for postconviction relief, Goods seeks to challenge his restitution order. He bases his challenge on the lack of a final restitution order considering his reasonable ability to pay and claims any restitution order is not enforceable under *State v. Albright*, 925 N.W.2d 144, 160–61 (Iowa 2019).

The supreme court has held that just because the absence of a reasonable-ability-to-pay hearing has not been raised until direct appeal in recent cases "does not mean that such an award of restitution is illegal and may be challenged at any time by filing a motion to correct an illegal sentence." *Gross*, 935 N.W.2d at 699 (Iowa 2019). The court further reaffirmed that "once the deadline for direct appeal has run, the defendant is limited to filing a petition to modify restitution (or the plan of restitution) under Iowa Code section 910.7." *Id.*

Iowa Code section 910.7 provides,

> At any time during the period of . . . incarceration, the offender or the office or individual who prepared the offender's restitution plan may petition the court on any matter related to the plan of restitution or

> restitution plan of payment and the court shall grant a hearing if on the face of the petition it appears that a hearing is warranted.

The restitution hearing is a civil proceeding collateral to the criminal matter, and the defendant may request the hearing "at any time during the pendency of the restitution plan." *State v. Lessner*, 626 N.W.2d 869, 871 (Iowa Ct. App. 2001).

The proper mechanism for Goods to challenge his plan of restitution outside a direct appeal is through a section 910.7 petition for hearing. *See Gross*, 935 N.W.2d at 698–99; *Albright*, 925 N.W.2d at 162 (noting the court may modify the plan of restitution in a 910.7 hearing according to the offender's reasonable ability to pay). In fact, postconviction law specifically excludes restitution from postconviction actions. Iowa Code § 822.2(1)(g) (allowing a person convicted to institute a proceeding for a conviction or sentence subject to collateral attack "except alleged error relating to restitution, court costs, or fees under section 904.702 or chapter 815 or 910"). We find this claim cannot be brought in the present action.

**AFFIRMED.**